# Commonwealth of Massachusetts

FILED
CLERK'S OFFICE

2004 FEB -9 P 1:39

U.S. DISTRICT COURT
DISTRICT OF MASS.

Worcester, SS.

Superior Court
Department
of the
Trial Court

---

**ITASN INC.**

Plaintiff

v.

**JOHN DALTON, JULIE HARRIS d/b/a HELLO WORLD TRAVEL, INC., and THE WARREN TRAVEL GROUP, INC.**

Defendants

---

Civil Action
No. 04-0200

# 04-40019

## <u>NOTICE OF REMOVAL</u>

To the Honorable Judges of the United States District Court for the District of Massachusetts:

The defendant John Dalton in the above matter respectfully states as follows:

1. On February 4, 2004, a complaint naming the defendant was received by the defendant at his North Carolina address. Said complaint had previously been filed in the Superior Court for Worcester County, Massachusetts. A copy of said complaint is attached to this petition as Exhibit 1.

2. This action is one over which this court has jurisdiction under 28 U.S.C. § 1332. Plaintiff is a corporation incorporated under the laws of Massachusetts and having its principal place of business in the Commonwealth of Massachusetts. Defendant John Dalton is an

individual who is a citizen of North Carolina. Defendant Julie Harris is a citizen of Nevada.

Defendant Warren Travel Group, Inc. is a Connecticut corporation having its principal place of

business in the State of Connecticut. The matter in controversy exceeds, exclusive of interest and

costs, the sum specified by 28 U.S.C. § 1332.

WHEREFORE, the defendant prays that the above action now pending against it in the

Worcester Superior Court be removed to this court.

**JOHN DALTON**
By his attorneys:

Owen Gallagher
BBO # 183420
Garrett Harris
BBO # 548838
Gallagher and Associates, P.C.
One Constitution Center
Boston, MA 02129
(617) 598-3810



**COPY**

COMMONWEALTH OF MASSACHUSETTS

WORCESTER, SS.                                 SUPERIOR COURT
                                              CIVIL ACTION NO. 04-0200 β

                                   )
ITASN INC.,                        )
          Plaintiff,               )
                                   )
v.                                 )            **VERIFIED COMPLAINT**
                                   )
JOHN DALTON, JULIE HARRIS d/b/a    )
HELLO WORLD TRAVEL, INC. and       )          **RECEIVED**
THE WARREN TRAVEL GROUP,           )
INC. ,                             )            JAN 3 0 2004
          Defendants               )          CLERK OF COURTS
                                   )          WORCESTER COUNT^

**A. The Parties**

1.       The Plaintiff, ITASN Inc. ("ITASN") is a Massachusetts corporation with a principal

place of business in Westboro, Worcester County, Massachusetts.

2.       The Defendant John Dalton ("Dalton") is an individual residing in Fuquay Varina, North

Carolina.

3.       The Defendant Julie Harris is an individual doing business in the name of a dissolved

Nevada corporation known as Hello World Travel, Inc. ("Hello") in Sparks, Nevada.

4.       The Defendant The Warren Travel Group, Inc.  ("Warren") is a Connecticut

corporation, with a principal place of business in Westport, Connecticut.

**B. Jurisdiction and Venue**

5.       This Court has jurisdiction over the Defendants under G.L. c. 223A, § 3, because the

conduct complained of arises from the Defendants transacting business in this Commonwealth,

1

contracting to supply services in this Commonwealth, and causing tortious injury in this Commonwealth.

6.     Venue is appropriate since the Plaintiff has a usual place of business in Worcester County.

### C. General Background

7.     ITASN is in the travel business.  While initially established as a travel agency, over time ITASN has developed a unique and innovative business model of bringing together a number of smaller and mid-sized travel agencies to do business through ITASN in order to benefit from the lower costs and greater profits available from reaching certain purchasing targets.  This business model was and is proprietary to ITASN.  ITASN benefitted from this business through membership fees, shared commissions, negotiating incentives from airlines and other fees and benefits.  The member agencies benefitted by lower costs and increased commissions.

8.     ITASN must achieve a certain market share during a relevant time frame in order to obtain increased commissions and revenues from airlines.  With central reservation systems, such as the system known as Sabre Reservation System ("Sabre"), the significant factor is the number of "segments" booked.  "Segments" are the individual "legs" of any passenger's given itinerary.  Unless a target number of segments is reached by ITASN, it must repay a set amount to the reservation system for every segment it falls short.

### D. John Dalton

9.     Dalton was hired by ITASN as a consultant, commencing on October 1, 2002, and ending on March 31, 2003.

10.     In connection with his employment, on or about January 6, 2003, Dalton signed an

2

Agreement for Consulting Services ( the "Agreement"). A copy of the Agreement is annexed hereto as Exhibit "A."

    11.      The Agreement provides in relevant part:

> **3. Confidentiality and non disclosure**. All information provided to DALTON by ITASN or by its affiliates or directors, officers, employees, controlling persons, partners, agents, representatives and advisors (collectively, "Our Representatives" regardless of the manner in which such information is provided, is referred to in this Agreement as "Our Proprietary Information." . .

> Our Proprietary Information shall be used by you and Your Representatives solely for the purpose of providing consulting services to ITASN and will not be used by you or Your Representatives for any other purpose. Nothing contained in this Agreement, however, shall prevent you from disclosing such of Our Proprietary Information as is required by applicable law, in the opinion of your outside legal counsel.

> You will be responsible for any broach [sic] of the terms of this Agreement by you or any of Your Representatives . . .

> If it is demonstrated that you have disclosed information in violation of any agreements between us, we shall be entitled to an injunction to restrain the [sic] you from disclosing, in whole or in part, such Information, or from providing any services to any party to whom such Information has been disclosed or may be disclosed. We shall not be prohibited by this provision from pursuing other remedies, including a claim for losses and damages.

> The confidentiality provisions of any agreement between the parties shall remain in full force and effect following the termination of any agreement between the parties.

    12.      In connection with his employment by ITASN as a consultant, Dalton was given full access to all of ITASN's information relating to the accounts of member agencies, as well as to ITASN's mode of operations, fee structure, commission division, etc.

    13.      Dalton's employment duties included locating new agencies to join the ITASN

3

network.

14.    In connection with his duties for ITASN, Dalton was asked to conduct certain "due diligence" for ITASN and verify information relating to the Hello agency which had asked to join the ITASN program.

15.    Dalton in apparent conspiracy with Hello and perhaps others, allegedly verified that at the time it sought to join with ITASN, Hello was being paid $1.25 per segment from Sabre and that it had been booking approximately 90,000 segments per year.  Based upon this allegedly "verified" information, ITASN agreed to pay Hello $1.35 per segment routed through ITASN's Sabre account and Hello agreed to roll its own Sabre account into ITASN's.

16.    ITASN later discovered that in fact, Hello was being paid only $0.75 per segment and that its business level was only about half of the segments represented.

17.    Had ITASN been correctly informed that Hello was being paid only $0.75 per segment and that its business level was only about half of the segments represented, ITASN would have agreed to pay Hello only $0.85 per segment.

18.    As a result of the misrepresentations made to it, ITASN suffered damages resulting from overpayments to Hello (which should have only been paid $0.85 per segment based on what it had been receiving) and resulting from ITASN's failure to meet segment levels represented to Sabre in reliance upon Hello's promised levels of business.

19.    As a result of this and other shortcomings, Dalton was terminated by ITASN.

**E. Dalton's Post-Termination Activities in Conspiracy with Hello**

20.    ITASN has recently learned that Dalton and Hello have engaged in a series of

improprieties since Dalton ceased working for ITASN.

21.      ITASN's relationship with Hello was reciprocal. Any bookings with airlines other than United Airlines by Hello was to be routed through ITASN.. Conversely all of ITASN's (and its corresponding agencies') United Airlines reservations were to be directed through Hello.

22.      Upon information and belief, Hello (Julie Harris) and Dalton conspired to breach Hello's agreement with ITASN and to defraud ITASN of its commissions by using the open data link between ITASN and Hello intended to permit this cross-referral of bookings, so as to divert transactions and switch account numbers of bookings routed through Hello.

23.      Specifically Hello (Julie Harris) and/or Dalton changed the account numbers ascribed to ITASN-generated bookings to an account number assigned to AIM, which upon information and belief is a trade name used by Dalton. As a result, monthly accountings of commissions due were not credited to ITASN, but rather to AIM. Thus, Hello and/or Dalton have received commissions and fees due to ITASN, and have misled ITASN so that it would not be aware of these diversions.

24.      ITASN has further learned that Hello (Julie Harris) copied what are known as "star profiles" of ITASN's member agencies onto its system, then changed the operative account numbers for them.

25.      In addition, Dalton and Hello (Julie Harris) have, in breach of their contractual and fiduciary duties to ITASN, contacted its member agencies directly in an effort to subvert that business away from ITASN and direct it to Hello. In connection with these activities, Hello and Dalton have used various improper means, including:

    a. Direct competitive solicitation;

b. Misrepresenting that due to "technical" issues the agencies needed new Pseudo City Codes ("PCC") thereby diverting the accounts and/or their revenues from ITASN to Hello. (Agencies under agreement with ITASN are assigned subsidiary Sabre numbers through ITASN's PCC. PCC's are Sabre's identifying account addresses. They identify ITASN and ITASN ascribes a subsidiary PCC number to its member agencies. This system permits a particular reservation to be credited to ITASN and its member agency.)

c. Directly using computerized access to connected agencies' accounts to obtain individual transaction records and modify their account numbers in that agencies computer systems.

26.     As a result of these activities, Hello (and Dalton) have received credit from Sabre and various airlines, to the detriment of ITASN.

27.     Hello has failed to pay ITASN amounts owed as a result of both diverted business and amounts due ITASN under the cross referral agreement between the parties.

28.     ITASN's damages include lost commissions, penalties and increased prices for not meeting booking targets and loss of customers. It is estimated that such damages could be in excess of $300,000.

**F. Facts Relevant to Warren**

29.     Warren is a travel agency in competition with ITASN.

30.     Warren, either by hacking into ITASN computers as described below or as a result of receiving ITASN's confidential information from Dalton has misappropriated significant customer data,

6

and customer business from ITASN.

31.    It appears that Warren and ITASN had relationships with certain third party agencies and that as a result each had data links with those agencies. It is believed that Warren may have found a way to use these data links so as to hack into ITASN's customer data and copy the same onto its systems. In the alternative or perhaps in conjunction with this, it is believed that Dalton supplied Warren with significant ITASN confidential customer information.

32.    ITASN was not aware of this open data link, until January of 2004, when it discovered Warren had its confidential data.

33.    Upon information and belief, Warren and/or Dalton (doing business as AIM) used ITASN's customer information to try to redirect ITASN business to Warren thus depriving ITASN of its fees, commissions, etc. Warren and/or Dalton have contacted ITASN's member agencies to seek to have them redirect their business through Warren. Dalton has also misrepresented facts about ITASN with customers of ITASN to seek to have them redirect their business through AIM and perhaps Warren.

34.    ITASN's damages include lost commissions, penalties and increased prices for not meeting booking targets and loss of customers. Upon information and belief such damages could exceed $100,000.

### Count I Breach of Contract against John Dalton

35.    The Plaintiff repeats and realleges the allegations of the previous paragraphs of the Complaint.

36.    Dalton breached his contract with ITASN and specifically his duties of confidentiality,

7

thereby causing ITASN substantial damages

### Count II Breach of Fiduciary Duties Against Dalton

37.     The Plaintiff repeats and realleges the allegations of the previous paragraphs of the Complaint.

38.     Dalton breached his fiduciary duties to ITASN, thereby causing ITASN substantial damages

### Count III Theft of Trade Secrets Against Dalton and Hello

39.     The Plaintiff repeats and realleges the allegations of the previous paragraphs of the Complaint.

40.     Dalton and Hello have, in various ways described above, stolen and used confidential, proprietary and secret information of ITASN.

41.     As a result of said actions, ITASN has suffered and continues to suffer substantial damages.

### Count IV Breach of Contract Against Hello

42.     The Plaintiff repeats and realleges the allegations of the previous paragraphs of the Complaint.

43.     Hello breached its agreement with ITASN, thereby causing ITASN substantial damages.

### Count V Claim for Fraud Against Warren

44.     The Plaintiff repeats and realleges the allegations of the previous paragraphs of the Complaint.

8

45.     Warren has stolen and misappropriated ITASN trade secrets and utilized them for its own benefit in competition with ITASN, thereby causing ITASN substantial damages.

### Count VI Conspiracy to Commit Fraud Against Dalton and Hello

46.     The Plaintiff repeats and realleges the allegations of the previous paragraphs of the Complaint.

47.     Dalton and Hello have conspired to commit fraud agaisnt ITASN by misappropriating its confidential, secret and proprietary information and to use it to improperly redirect revenues and customers of ITASN to Hello.

### Count VII Fraud and Misrepresentation Against Dalton

48.     The Plaintiff repeats and realleges the allegations of the previous paragraphs of the Complaint.

49.     Dalton in misrepresenting his confirmation of Hello's segment volume and payments per segment caused ITASN substantial damages.

### Count VII Interference with Advantageous and
### Contractual Relations Against All Defendants

50.     The Plaintiff repeats and realleges the allegations of the previous paragraphs of the Complaint.

51.     Dalton, Hello and Warren have intentionally, by improper means sought to interfere with ITASN's advantageous and contractual relations with its member agencies.

### Count IX Violation of General Laws Chapter 93A

52.     The Plaintiff repeats and realleges the allegations of the previous paragraphs of the

9

Complaint.

53.    Both the Plaintiff and the Defendants are in trade or commerce.

54.    The conduct of the Defendants Dalton, Hello and Warren, separately or in various combinations was unfair and deceptive within the meaning of General Laws chapter 93A, Section 11.

55.    Upon information and belief said conduct was knowing and willful.

56.    As a result, ITASN is entitled to recover not only all damages sustained, but also its attorneys' fees and treble damages.

**Count X Action for Injunctive Relief**

57.    The Plaintiff repeats and realleges the allegations of the previous paragraphs of the Complaint.

58.    ITASN has suffered and continues to suffer irreparable harm as a result of the actions of Dalton, Hello and Warren.

59.    ITASN requires injunctive relief to stop further irreparable harm from the actions of the Defendants.

Wherefore ITASN prays that:

1.    The Defendant John Dalton be temporarily enjoined and restrained from disclosing or utilizing any information he obtained from ITASN with regard to its past and present member agencies.

2.    The Defendant John Dalton be temporarily enjoined and restrained from directly or indirectly contacting any of ITASN's past and present member agencies.

3.    The Defendant John Dalton be temporarily enjoined and restrained to immediately return to ITASN any documents or data he obtained directly or indirectly concerning ITASN or any of

10

ITASN's past and present member agencies.

4.  The Defendant Julie Harris, doing business as Hello World Travel, Inc. and her agents, servants, employees and attorneys be temporarily enjoined and restrained from utilizing any information or data obtained directly or indirectly from ITASN.

5.  The Defendant Julie Harris, doing business as Hello World Travel, Inc. and her agents, servants, employees and attorneys be temporarily enjoined and restrained from directly or indirectly contacting any of ITASN's past and present member agencies.

6.  The Defendant Julie Harris, doing business as Hello World Travel, Inc. and her agents, servants, employees and attorneys be temporarily enjoined and restrained to immediately return to ITASN any documents or data she obtained directly or indirectly concerning ITASN or any of ITASN's past and present member agencies.

7.  The Defendant Warren Travel Group, Inc. and its agents, servants, employees and attorneys be temporarily enjoined and restrained from utilizing any information or data obtained directly or indirectly from ITASN..

8.  The Defendant Warren Travel Group, Inc. and its agents, servants, employees and attorneys be temporarily enjoined and restrained from directly or indirectly contacting any of ITASN's past and present member agencies.

9.  The Defendant Warren Travel Group, Inc. and its agents, servants, employees and attorneys be temporarily enjoined and restrained to immediately return to ITASN any documents or data they obtained directly or indirectly concerning ITASN or any of ITASN's past and present member agencies.

11

10. The Defendants John Dalton, Julie Harris, doing business as Hello World Travel, Inc. and Warren Travel Group, Inc. be ordered to immediately provide an accounting to the Plaintiff ITASN for all business they have done and revenues they have received form any travel agency which is or was doing business with ITASN..

11. After hearing a preliminary injunction enter in accordance with prayers 1-10 above.

12. This Court enter Judgment against the Defendants John Dalton, Julie Harris, doing business as Hello World Travel, Inc. and Warren Travel Group, Inc. in the amount of all damages sustained by Plaintiff, plus treble damages and attorneys' fees under Gen. Laws c. 93A.

13 The Court enter such further relief as it deems just.

Signed this 26 day of JAN, 2004 under the pains and penalties of perjury.

Alan Kawadler, Vice President

Attorneys for ITASN Inc.

Richard E. Gentilli
BBO No. 189080
Thomas M. Looney
BBO No. 555040
Bartlett Hackett Feinberg PC.
10 High Street, Suite 920
Boston, MA 02110
617/422-0200

DATED:  January 28, 2004

12

EXHIBIT "A"

## AGREEMENT FOR CONSULTING SERVICES

This Agreement ("Agreement") is made on December 10, 2002 by and between ITASN, Inc, (ITASN) a Massachusetts Corporation and John Dalton (DALTON).

A.  ITASN is engaged in the business of providing support services to travel agencies.
B.  ITASN desires to enter into a consulting agreement with DALTON to provide consulting services.
C.  DALTON is willing to enter into a Consulting agreement to provide consulting services.

Therefore, the parties agree to the following confidentiality and non disclosure conditions:

1.  **Compensation.**

    a.  CONSULTING -ITASN will pay DALTON will be paid $2,500 per month to provide consulting services.  ITASN will specify the nature of said consulting services.

    b.  During the first year that an account (agency) that signs with The Company, the DALTON will be paid a cash bonus of twenty-five cents (.25) for every GDS segment that is generated by the account.  DALTON will be paid fifteen cents (.15) for every GDS segment that is generated the second year that account is with the company and ten cents (.10) for every GDS segment that is generated the third year the account is with ITASN.   The only exception is when there are any pre-agreed commission splits with other employees, contractors or any other entity.

    c.  Commission payments begin the month following payment by the GDS provider, which is paid quarterly.

    d.  Conversion payments. Sabre pays the ITASN $1.00 for every Agency that switches to it's GDS. The payment is based on the agencies segment productivity for the prior 12 months. ITASN will pay DALTON 10% of the conversion fee. Payment will be made in 12 equal consecutive installments beginning the month following the payment by the GDS. If the agency fails to utilize the services of ITASN, DALTON will be responsible for repaying any commissions it has received.

    e.  Expenses. DALTON will be paid for all authorized expenses. ITASN at its sole option will authorize expenses.

2.  **Consulting Responsibilities.** The nature, format and reporting of consulting services Will be determined by ITASN.

**3. Confidentiality and non disclosure.** All information provided to DALTON by ITASN or by it's affiliates or directors, officers, employees, controlling persons, partners, agents, representatives and advisors (collectively, "Our Representatives regardless of the manner in which such information is provided, is referred to in this Agreement as "Our Proprietary Information". Our Proprietary information does not include, however. information that (i) is or becomes generally available to the public other than in a manner not permitted by this Agreement, (ii) was available to you and Your Representatives on an non Enforceable basis prior to its disclosure to you or Your Representative, or (iii) becomes available to you or Your Representatives on a non confidential basis from a person who is not prohibited from transmitting our proprietary information to you or Your Representatives.

Our Proprietary Information shall be used by you and Your Representatives solely for the purpose of providing consulting services to ITASN and will not be used by you or Your Representatives for any other purpose. Nothing contained in this Agreement, however, shall prevent you from disclosing such of Our Proprietary Information as is required by applicable law, in the opinion of your outside legal counsel.

You will be responsible for any broach of the terms of this Agreement by you or any of Your Representatives, In the event that you are requested pursuant to, or required by, applicable   law to disclose any of Our Proprietary Information, you will provide us with prompt notice of such request or requirements and will consult with us concerning the information to be disclosed.

If it demonstrated that you have disclosed information in violation of any agreements between us, we shall be entitled to an injunction to restrain the you from disclosing, in whole or in part, such Information, or from providing any services to any party to whom such Information has been disclosed or may be disclosed.  We shall not be prohibited by this provision from pursuing other remedies, including a claim for losses and damages.

The confidentiality provisions of any agreement between the parties shall remain in full force and effect following the termination of any agreement between the parties.

**4. Notices.** All notices are required or permitted under this Agreement shall be in writing and shall be deemed delivered when delivered in person or deposited in the United States mail; postage paid, and sent to the last and usual place of business. Both parties agree to keep the other informed of their addresses.

**5. Entire Agreement.**  This Agreement contains the entire agreement of the parties and there are no other promises or conditions in any other agreement whether oral or written. This Agreement supersedes any prior written or oral agreements between the parties.

**6. Amendment.**  This Agreement may be modified or amended, if the amendment is made in writing and is signed by both parties.

**7. Severability.**  If any provision of this Agreement shall be held to be invalid or unenforceable for any reason, the remaining provisions shall continue to be valid and enforceable.  If a court finds that any provision of this Agreement is invalid or unenforceable, but that by limiting such provision it would become valid and enforceable, then such provision shall be deemed to be written, construed, and enforced as so limited.

**8. Waiver of Contractual Right.**  The failure of either party to enforce any provision of this Agreement shall not be construed as a waiver or limitation of that party's right to subsequently enforce and compel strict compliance with every provision of this Agreement.

**9. Enforcement.**  If it becomes necessary for ITASN to engage in any legal action to enforce any of the provisions the parties agree to binding arbitration.

**10. Applicable Law.**  This Agreement shall be governed by the laws of the Commonwealth of Massachusetts and any disputes regarding this agreement will be resolved through the Massachusetts judicial system.

ITASN, Inc.

Alan Kawadler  Date 1-6-03

John Dalton  Date 1-6-03

04-40019

JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

ITASN, Inc.

**DEFENDANTS**

John Dalton, Julie Harris d/b/a Hello World Travel, Inc. and The Warren Travel Group, Inc.

(b) County of Residence of First Listed Plaintiff  **Worcester**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)

Richard E. Gentilli, Esquire
Bartlett, Hackett, Feinberg, P.C.
10 High Street, Suite 920
Boston, MA  02110          617-422-0200

Attorneys (If Known)

Garrett Harris, Esquire
Gallagher & Asociates, P.C.
One Constitution Center
Boston, MA  02129-2095     617-598-3810

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question (U.S. Government Not a Party)
- [X] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff

(For Diversity Cases Only)                                   and One Box for Defendant)

|  | PLF | DEF |  | PLF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [X] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [X] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reapportionment |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 362 Personal Injury— | [ ] 620 Other Food & Drug | | [ ] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product | Med. Malpractice | [ ] 625 Drug Related Seizure | [ ] 423 Withdrawal | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | Liability | [ ] 365 Personal Injury — | of Property 21 USC | 28 USC 157 | [ ] 450 Commerce/ICC Rates/etc. |
| [ ] 150 Recovery of Overpayment | [ ] 320 Assault, Libel & | Product Liability | [ ] 630 Liquor Laws | | [ ] 460 Deportation |
| & Enforcement of | Slander | [ ] 368 Asbestos Personal | [ ] 640 R.R. & Truck | **PROPERTY RIGHTS** | [ ] 470 Racketeer Influenced and |
| Judgement | [ ] 330 Federal Employers' | Injury Product | [ ] 650 Airline Regs. | | Corrupt Organizations |
| [ ] 151 Medicare Act | Liability | Liability | [ ] 660 Occupational | [ ] 820 Copyrights | [ ] 810 Selective Service |
| [ ] 152 Recovery of Defaulted | [ ] 340 Marine | **PERSONAL PROPERTY** | Safety/Health | [ ] 830 Patent | [ ] 850 Securities/Commodities/ |
| Student Loans | [ ] 345 Marine Product | [ ] 370 Other Fraud | [ ] 690 Other | [ ] 840 Trademark | Exchange |
| (Excl. Veterans) | Liability | [ ] 371 Truth in Lending | | | [ ] 875 Customer Challenge |
| [ ] 153 Recovery of Overpayment | [ ] 350 Motor Vehicle | [ ] 380 Other Personal | **LABOR** | **SOCIAL SECURITY** | 12 USC 3410 |
| of Veteran's Benefits | [ ] 355 Motor Vehicle | Property Damage | [ ] 710 Fair Labor Standards | [ ] 861 HIA (1395ff) | [ ] 891 Agricultural Acts |
| [ ] 160 Stockholders' Suits | Product Liability | [ ] 385 Property Damage | Act | [ ] 862 Black Lung (923) | [ ] 892 Economic Stabilization Act |
| [X] 190 Other Contract | [ ] 360 Other Personal Injury | Product Liability | [ ] 720 Labor/Mgmt. Relations | [ ] 863 DIW C/DIW W (405(g)) | [ ] 893 Environmental Matters |
| [ ] 195 Contract Product Liability | | | | [ ] 864 SSID Title XVI | [ ] 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 730 Labor/Mgmt.Reporting | [ ] 865 RSI (405(g)) | [ ] 895 Freedom of |
| [ ] 210 Land Condemnation | [ ] 441 Voting | [ ] 510 Motions to Vacate | & Disclosure Act | **FEDERAL TAX SUITS** | Information Act |
| [ ] 220 Foreclosure | [ ] 442 Employment | Sentence | [ ] 740 Railway Labor Act | | [ ] 900 Appeal of Fee |
| [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/ | Habeas Corpus: | | [ ] 870 Taxes (U.S. Plaintiff | Determination Under Equal Access to |
| [ ] 240 Torts to Land | Accommodations | [ ] 530 General | [ ] 790 Other Labor Litigation | or Defendant) | Justice |
| [ ] 245 Tort Product Liability | [ ] 444 Welfare | [ ] 535 Death Penalty | | [ ] 871 IRS—Third Party | [ ] 950 Constitutionality of |
| [ ] 290 All Other Real Property | [ ] 440 Other Civil Rights | [ ] 540 Mandamus & Other | [ ] 791 Empl. Ret. Inc. | 26 USC 7609 | State Statutes |
| | | [ ] 550 Civil Rights | Security Act | | [ ] 890 Other Statutory Actions |
| | | [ ] 555 Prison Condition | | | |

## V. ORIGIN   (PLACE AN "X" IN ONE BOX ONLY)

- [ ] 1 Original Proceeding
- [X] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION   (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Action for alleged breach of contract, theft of trade secrets, and unfair competition. Removal and diversity jurisdiction under 28 U.S.C. Sections 1332 and 1441.

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ 100,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND: [X] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE _____   DOCKET NUMBER _____

DATE  2/9/04

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

04 - 40019



UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1.    Title of case (name of first party on each side only)  *SK*  ITANE, Inc. v. John Dalton

2.    Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.  (See local rule 40.1(a)(1)).

☐    I.    160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

☐    II.    195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,    *Also complete AO 120 or AO 121
          740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.    for patent, trademark or copyright cases

☒    III.   110, 120, 130, 140, 151, (190) 210, 230, 240, 245, 290, 310,
          315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
          380, 385, 450, 891.

☐    IV.   220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
          690, 810, 861-865, 870, 871, 875, 900.

☐    V.    150, 152, 153.

3.    Title and number, if any, of related cases.  (See local rule 40.1(g)).  If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

     None

4.    Has a prior action between the same parties and based on the same claim ever been filed in this court?

                                                                   YES ☐    NO ☒

5.    Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?  (See 28 USC §2403)

                                                                   YES ☐    NO ☒

     If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

                                                                   YES ☐    NO ☐

6.    Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

                                                                   YES ☐    NO ☒

7.    Do all of the parties  in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? -  (See Local Rule 40.1(d)).

                                                                   YES ☒    NO ☐

     A.    If yes, in which division do all of the non-governmental parties reside?

          Eastern Division ☐          Central Division ☒          Western Division ☐

     B.    If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies,  residing in Massachusetts reside?

          Eastern Division ☐          Central Division ☐          Western Division ☐

8.    If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court?  (If yes, submit a separate sheet identifying the motions)

                                                                   YES ☒    NO ☐

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME  Garrett Harris

ADDRESS  Gallagher & Associates, P.C., One Constitution Center, Boston, MA  02129-2095

TELEPHONE NO.  617-598-3810

(Coversheetlocal.wpd  - 10/17/02)

8. Plaintiff's complaint contains a prayer for injunctive relief.