## Commonwealth of Massachusetts
### WORCESTER SUPERIOR COURT
### Case Summary
### Civil Docket

FILED
IN CLERK'S OFFICE

## WOCV2004-00200
## ITSN Inc v Dalton et al

2004 FEB 27 P 12: 38

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | | | | | | |
|---|---|---|---|---|---|---|
| **File Date** | 01/30/2004 | **Status** | Disposed: transfered to other court (dtrans) | | | |
| **Status Date** | 02/17/2004 | **Session** | B - Civil B (18 Worcester) | | | |
| **Origin** | 1 | **Case Type** | B99 - Misc tort | | | |
| **Lead Case** | | **Track** | F | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| **Service** | 04/29/2004 | **Answer** | 06/28/2004 | **Rule12/19/20** | 06/28/2004 |
| **Rule 15** | 06/28/2004 | **Discovery** | 11/25/2004 | **Rule 56** | 12/25/2004 |
| **Final PTC** | 01/24/2005 | **Disposition** | 03/25/2005 | **Jury Trial** | No |

### PARTIES

**Plaintiff**
ITSN Inc
Active 01/30/2004

**Private Counsel 189080**
Richard E Gentilli
Bartlett Hackett Feinberg
10 High Street
Suite 920
Boston, MA 02110
Phone: 617-422-0200
Fax: 617-422-0383
Active 01/30/2004 Notify

**Private Counsel 555040**
Thomas M Looney
Bartlett Hackett Feinberg
10 High Street
Suite 920
Boston, MA 02110
Phone: 617-422-0200
Fax: 617-422-0383
Active 01/30/2004 Notify

**Defendant**
John Dalton
Service pending 01/30/2004

**Defendant**
Julie Harris
dba Hello World Travel Inc
Service pending 01/30/2004

**Commonwealth of Massachusetts**
WORCESTER SUPERIOR COURT
Case Summary
Civil Docket

## WOCV2004-00200
### ITSN Inc v Dalton et al

| Doing busnss as (alias) | |
|---|---|
| Hello World Travel Inc<br>Active 01/30/2004 | |
| **Defendant**<br>Warren Travel Group Inc<br>Service pending 01/30/2004 | |

### ENTRIES

| Date | Paper | Text |
|---|---|---|
| 01/30/2004 | 1.0 | Verified Complaint & civil action cover sheet filed and rule 29 statement |
| 01/30/2004 | | Origin 1, Type B99, Track F. |
| 01/30/2004 | | Filing fee paid in the amount of $240.00, surcharge in the amount of $15.00 including $20.00 security fee. ($275.00) |
| 01/30/2004 | 2.0 | Plaintiff's motion for Short order of notice |
| 01/30/2004 | | MOTION (P#2) Short order of notice to issue, returnable 2-11-04 at 2:000pm in room 18 (John S. McCann, Justice (RAJ). |
| 01/30/2004 | | Notice of 93A complaint sent to Attorney General |
| 02/09/2004 | 3.0 | Notice for Removal to the United States District Court filed by John Dalton |
| 02/17/2004 | | Case REMOVED this date to US District Court of Massachusetts |

### EVENTS

| Date | Session | Event | Result |
|---|---|---|---|
| 02/11/2004 | Civil B (18 Worcester) | Motion/Hearing: prel inj | Event moved to another session |
| 02/11/2004 | Civil A (12 Worcester) | Hearing on Preliminary Injunction<br>Motion/Hearing: prel inj | Event canceled not re-scheduled |
| 01/31/2005 | Civil B (18 Worcester) | Status: Review Annual Fee<br>Send Notice | |

A true copy by photostatic process
Attest:
Asst. Clerk

| CIVIL ACTION COVER SHEET | 04-0200 | Trial Court of Massachusetts Superior Court Department County: Worcester |
|---|---|---|

| PLAINTIFF(S) | DEFENDANT(S) |
|---|---|
| ITASN, INC. | John Dalton, Julie Harris d/b/a Hello World Travel, Inc. and The Warren Travel Group, Inc. |

| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE (617) 422-0200 Richard E. Gentilli, Esq., 10 High St., Bartlett Hackett Feinberg  Boston, MA 02110 Board of Bar Overseers number: 189080 | ATTORNEY (if known) |
|---|---|

## Origin code and track designation

Place an x in one box only:

[X] 1. F01 Original Complaint
[ ] 2. F02 Removal to Sup.Ct. C.231,s.104 (Before trial) (F)
[ ] 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)

[ ] 4. F04 District Court Appeal c.231, s. 97 &104 (After trial) (X)
[ ] 5. F05 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P. 60) (X)
[ ] 6. E10 Summary Process Appeal (X)

## TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| B99 | Theft of Trade Secrets; Unfair Competition | ( F ) | ( ) Yes    ( x ) No |

**The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.**

### TORT CLAIMS
(Attach additional sheets as necessary)

A. Documented medical expenses to date:
    1.   Total hospital expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . . .
    2.   Total Doctor expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . . .
    3.   Total chiropractic expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . . .
    4.   Total physical therapy expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . . .
    5.   Total other expenses (describe) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . . .
                                     Subtotal $. . . . . . . . . . . .
B. Documented lost wages and compensation to date . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . . .
C. Documented property damages to date . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . . .
D. Reasonably anticipated future medical and hospital expenses . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . . .
E. Reasonably anticipated lost wages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . . .
F. Other documented items of damages (describe)
                               $. . . . . . . . . . . .
G. Brief description of plaintiff's injury, including nature and extent of injury (describe)

                               $. . . . . . . . . . . .
                            TOTAL $. . . . . . . . . . . .

### CONTRACT CLAIMS
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):
   Breach of contractual and fiduciary duties; theft of trade secrets; unfair competition

                               In Excess Of
                              **TOTAL $. 100,000.00. .**

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

**"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."**

Signature of Attorney of Record _____    DATE: 1/29/04

A true copy, photostatic process
Attest: _____    Richard E. Gentilli, Esquire
Asst. Clerk

AOTC-6 mtc005-11/99
A.O.S.C. 1-2000

_____ 1/30/04

## COMMONWEALTH OF MASSACHUSETTS

WORCESTER, SS.

SUPERIOR COURT
CIVIL ACTION NO. 04-0200B

| | |
|---|---|
| ITASN INC.,<br>　　　Plaintiff, | ) <br> ) <br> ) <br> ) |
| v. | ) <br> ) |
| JOHN DALTON, JULIE HARRIS d/b/a<br>HELLO WORLD TRAVEL, INC. and<br>THE WARREN TRAVEL GROUP,<br>INC. ,<br>　　　Defendants | ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**VERIFIED COMPLAINT**

# FILED

JAN 3 0 2004

ATTEST:

CLERK

### A. The Parties

1.　　The Plaintiff, ITASN Inc. ("ITASN") is a Massachusetts corporation with a principal

place of business in Westboro, Worcester County, Massachusetts.

2.　　The Defendant John Dalton ("Dalton") is an individual residing in Fuquay Varina, North

Carolina.

3.　　The Defendant Julie Harris is an individual doing business in the name of a dissolved

Nevada corporation known as Hello World Travel, Inc. ("Hello") in Sparks, Nevada.

4.　　The Defendant The Warren Travel Group, Inc. ("Warren") is a Connecticut

corporation, with a principal place of business in Westport, Connecticut.

### B. Jurisdiction and Venue

5.　　This Court has jurisdiction over the Defendants under G.L. c. 223A, § 3, because the

conduct complained of arises from the Defendants transacting business in this Commonwealth,

1

contracting to supply services in this Commonwealth, and causing tortious injury in this Commonwealth.

     6.     Venue is appropriate since the Plaintiff has a usual place of business in Worcester County.

## C. General Background

     7.     ITASN is in the travel business. While initially established as a travel agency, over time ITASN has developed a unique and innovative business model of bringing together a number of smaller and mid-sized travel agencies to do business through ITASN in order to benefit from the lower costs and greater profits available from reaching certain purchasing targets. This business model was and is proprietary to ITASN. ITASN benefitted from this business through membership fees, shared commissions, negotiating incentives from airlines and other fees and benefits. The member agencies benefitted by lower costs and increased commissions.

     8.     ITASN must achieve a certain market share during a relevant time frame in order to obtain increased commissions and revenues from airlines. With central reservation systems, such as the system known as Sabre Reservation System ("Sabre"), the significant factor is the number of "segments" booked. "Segments" are the individual "legs"of any passenger's given itinerary. Unless a target number of segments is reached by ITASN, it must repay a set amount to the reservation system for every segment it falls short.

## D. John Dalton

     9.     Dalton was hired by ITASN as a consultant, commencing on October 1, 2002, and ending on March 31, 2003.

     10.     In connection with his employment, on or about January 6, 2003, Dalton signed an

2

Agreement for Consulting Services ( the "Agreement"). A copy of the Agreement is annexed hereto as

Exhibit "A."

11.    The Agreement provides in relevant part:

> **3. Confidentiality and non disclosure**. All information provided to
> DALTON by ITASN or by its affiliates or directors, officers, employees,
> controlling persons, partners, agents, representatives and advisors (collectively,
> "Our Representatives" regardless of the manner in which such information is
> provided, is referred to in this Agreement as "Our Proprietary Information." . .
> .

> Our Proprietary Information shall be used by you and Your Representatives
> solely for the purpose of providing consulting services to ITASN and will not be
> used by you or Your Representatives for any other purpose. Nothing contained
> in this Agreement, however, shall prevent you from disclosing such of Our
> Proprietary Information as is required by applicable law, in the opinion of your
> outside legal counsel.

> You will be responsible for any broach [sic] of the terms of this Agreement by
> you or any of Your Representatives . . .

> If it is demonstrated that you have disclosed information in violation of  any
> agreements between us, we shall be entitled to an injunction to restrain the [sic]
> you from disclosing, in whole or in part, such Information, or from providing any
> services to any party to whom such Information has been disclosed or may be
> disclosed.  We shall not be prohibited by this provision from pursuing other
> remedies, including a claim for losses and damages.

> The confidentiality provisions of any agreement between the parties shall remain
> in full force and effect following the termination of any agreement between the
> parties.

12.    In connection with his employment by ITASN as a consultant, Dalton was given full

access to all of ITASN's information relating to the accounts of member agencies, as well as to

ITASN's mode of operations, fee structure, commission division, etc.

13.    Dalton's employment duties included locating new agencies to join the ITASN

3

network.

14.    In connection with his duties for ITASN, Dalton was asked to conduct certain "due diligence" for ITASN and verify information relating to the Hello agency which had asked to join the ITASN program.

15.    Dalton in apparent conspiracy with Hello and perhaps others, allegedly verified that at the time it sought to join with ITASN, Hello was being paid $1.25 per segment from Sabre and that it had been booking approximately 90,000 segments per year.  Based upon this allegedly "verified" information, ITASN agreed to pay Hello $1.35 per segment routed through ITASN's Sabre account and Hello agreed to roll its own Sabre account into ITASN's.

16.    ITASN later discovered that in fact, Hello was being paid only $0.75 per segment and that its business level was only about half of the segments represented.

17.    Had ITASN been correctly informed that Hello was being paid only $0.75 per segment and that its business level was only about half of the segments represented, ITASN would have agreed to pay Hello only $0.85 per segment.

18.    As a result of the misrepresentations made to it, ITASN suffered damages resulting from overpayments to Hello (which should have only been paid $0.85 per segment based on what it had been receiving) and resulting from ITASN's failure to meet segment levels represented to Sabre in reliance upon Hello's promised levels of business.

19.    As a result of this and other shortcomings, Dalton was terminated by ITASN.

**E. Dalton's Post-Termination Activities in Conspiracy with Hello**

20.    ITASN has recently learned that Dalton and Hello have engaged in a series of

4

improprieties since Dalton ceased working for ITASN.

21.    ITASN's relationship with Hello was reciprocal. Any bookings with airlines other than United Airlines by Hello was to be routed through ITASN.. Conversely all of ITASN's (and its corresponding agencies') United Airlines reservations were to be directed through Hello.

22.    Upon information and belief, Hello (Julie Harris) and Dalton conspired to breach Hello's agreement with ITASN and to defraud ITASN of its commissions by using the open data link between ITASN and Hello intended to permit this cross-referral of bookings, so as to divert transactions and switch account numbers of bookings routed through Hello.

23.    Specifically Hello (Julie Harris) and/or Dalton changed the account numbers ascribed to ITASN-generated bookings to an account number assigned to AIM, which upon information and belief is a trade name used by Dalton. As a result, monthly accountings of commissions due were not credited to ITASN, but rather to AIM. Thus, Hello and/or Dalton have received commissions and fees due to ITASN, and have misled ITASN so that it would not be aware of these diversions.

24.    ITASN has further learned that Hello (Julie Harris) copied what are known as "star profiles" of ITASN's member agencies onto its system, then changed the operative account numbers for them.

25.    In addition, Dalton and Hello (Julie Harris) have, in breach of their contractual and fiduciary duties to ITASN, contacted its member agencies directly in an effort to subvert that business away from ITASN and direct it to Hello. In connection with these activities, Hello and Dalton have used various improper means, including:

a. Direct competitive solicitation;

5

b. Misrepresenting that due to "technical" issues the agencies needed new Pseudo City

Codes ("PCC") thereby diverting the accounts and/or their revenues from ITASN to

Hello. (Agencies under agreement with ITASN are assigned subsidiary Sabre numbers

through ITASN's PCC. PCC's are Sabre's identifying account addresses. They

identify ITASN and ITASN ascribes a subsidiary PCC number to its member agencies.

This system permits a particular reservation to be credited to ITASN and its member

agency.)

c. Directly using computerized access to connected agencies' accounts to obtain

individual transaction records and modify their account numbers in that agencies

computer systems.

26.     As a result of these activities, Hello (and Dalton) have received credit from Sabre and

various airlines, to the detriment of ITASN.

27.     Hello has failed to pay ITASN amounts owed as a result of both diverted business and

amounts due ITASN under the cross referral agreement between the parties.

28.     ITASN's damages include lost commissions, penalties and increased prices for not

meeting booking targets and loss of customers. It is estimated that such damages could be in excess of

$300,000.

**F. Facts Relevant to Warren**

29.     Warren is a travel agency in competition with ITASN.

30.     Warren, either by hacking into ITASN computers as described below or as a result of

receiving ITASN's confidential information from Dalton has misappropriated significant customer data,

6

and customer business from ITASN.

31.    It appears that Warren and ITASN had relationships with certain third party agencies and that as a result each had data links with those agencies. It is believed that Warren may have found a way to use these data links so as to hack into ITASN's customer data and copy the same onto its systems. In the alternative or perhaps in conjunction with this, it is believed that Dalton supplied Warren with significant ITASN confidential customer information.

32.    ITASN was not aware of this open data link, until January of 2004, when it discovered Warren had its confidential data.

33.    Upon information and belief, Warren and/or Dalton (doing business as AIM) used ITASN's customer information to try to redirect ITASN business to Warren thus depriving ITASN of its fees, commissions, etc. Warren and/or Dalton have contacted ITASN's member agencies to seek to have them redirect their business through Warren. Dalton has also misrepresented facts about ITASN with customers of ITASN to seek to have them redirect their business through AIM and perhaps Warren.

34.    ITASN's damages include lost commissions, penalties and increased prices for not meeting booking targets and loss of customers. Upon information and belief such damages could exceed $100,000.

### Count I Breach of Contract against John Dalton

35.    The Plaintiff repeats and realleges the allegations of the previous paragraphs of the Complaint.

36.    Dalton breached his contract with ITASN and specifically his duties of confidentiality,

7

thereby causing ITASN substantial damages

## Count II Breach of Fiduciary Duties Against Dalton

37.     The Plaintiff repeats and realleges the allegations of the previous paragraphs of the
Complaint.

38.     Dalton breached his fiduciary duties to ITASN, thereby causing ITASN substantial
damages

## Count III Theft of Trade Secrets Against Dalton and Hello

39.     The Plaintiff repeats and realleges the allegations of the previous paragraphs of the
Complaint.

40.      Dalton and Hello have, in various ways described above, stolen and used confidential,
proprietary and secret information of ITASN.

41.     As a result of said actions, ITASN has suffered and continues to suffer substantial
damages.

## Count IV Breach of Contract Against Hello

42.     The Plaintiff repeats and realleges the allegations of the previous paragraphs of the
Complaint.

43.      Hello breached its agreement with ITASN, thereby causing ITASN substantial
damages.

## Count V Claim for Fraud Against Warren

44.     The Plaintiff repeats and realleges the allegations of the previous paragraphs of the
Complaint.

45.    Warren has stolen and misappropriated ITASN trade secrets and utilized them for its own benefit in competition with ITASN, thereby causing ITASN substantial damages.

### Count VI Conspiracy to Commit Fraud Against Dalton and Hello

46.    The Plaintiff repeats and realleges the allegations of the previous paragraphs of the Complaint.

47.    Dalton and Hello have conspired to commit fraud agaisnt ITASN by misappropriating its confidential, secret and proprietary information and to use it to improperly redirect revenues and customers of ITASN to Hello.

### Count VII Fraud and Misrepresentation Against Dalton

48.    The Plaintiff repeats and realleges the allegations of the previous paragraphs of the Complaint.

49.    Dalton in misrepresenting his confirmation of Hello's segment volume and payments per segment caused ITASN substantial damages.

### Count VII Interference with Advantageous and Contractual Relations Against All Defendants

50.    The Plaintiff repeats and realleges the allegations of the previous paragraphs of the Complaint.

51.    Dalton, Hello and Warren have intentionally, by improper means sought to interfere with ITASN's advantageous and contractual relations with its member agencies.

### Count IX Violation of General Laws Chapter 93A

52.    The Plaintiff repeats and realleges the allegations of the previous paragraphs of the

9

Complaint.

53.    Both the Plaintiff and the Defendants are in trade or commerce.

54.    The conduct of the Defendants Dalton, Hello and Warren, separately or in various combinations was unfair and deceptive within the meaning of General Laws chapter 93A, Section 11.

55.    Upon information and belief said conduct was knowing and willful.

56.    As a result, ITASN is entitled to recover not only all damages sustained, but also its attorneys' fees and treble damages.

### Count X Action for Injunctive Relief

57.    The Plaintiff repeats and realleges the allegations of the previous paragraphs of the Complaint.

58.    ITASN has suffered and continues to suffer irreparable harm as a result of the actions of Dalton, Hello and Warren.

59.    ITASN requires injunctive relief to stop further irreparable harm from the actions of the Defendants.

Wherefore ITASN prays that:

1.    The Defendant John Dalton be temporarily enjoined and restrained from disclosing or utilizing any information he obtained from ITASN with regard to its past and present member agencies.

2.    The Defendant John Dalton be temporarily enjoined and restrained from directly or indirectly contacting any of ITASN's past and present member agencies.

3.    The Defendant John Dalton be temporarily enjoined and restrained to immediately return to ITASN any documents or data he obtained directly or indirectly concerning ITASN or any of

10

ITASN's past and present member agencies.

4. The Defendant Julie Harris, doing business as Hello World Travel, Inc. and her agents, servants, employees and attorneys be temporarily enjoined and restrained from utilizing any information or data obtained directly or indirectly from ITASN.

5. The Defendant Julie Harris, doing business as Hello World Travel, Inc. and her agents, servants, employees and attorneys be temporarily enjoined and restrained from directly or indirectly contacting any of ITASN's past and present member agencies.

6. The Defendant Julie Harris, doing business as Hello World Travel, Inc. and her agents, servants, employees and attorneys be temporarily enjoined and restrained to immediately return to ITASN any documents or data she obtained directly or indirectly concerning ITASN or any of ITASN's past and present member agencies.

7. The Defendant Warren Travel Group, Inc. and its agents, servants, employees and attorneys be temporarily enjoined and restrained from utilizing any information or data obtained directly or indirectly from ITASN..

8. The Defendant Warren Travel Group, Inc. and its agents, servants, employees and attorneys be temporarily enjoined and restrained from directly or indirectly contacting any of ITASN's past and present member agencies.

9. The Defendant Warren Travel Group, Inc. and its agents, servants, employees and attorneys be temporarily enjoined and restrained to immediately return to ITASN any documents or data they obtained directly or indirectly concerning ITASN or any of ITASN's past and present member agencies.

11

10. The Defendants John Dalton, Julie Harris, doing business as Hello World Travel, Inc. and Warren Travel Group, Inc. be ordered to immediately provide an accounting to the Plaintiff ITASN for all business they have done and revenues they have received form any travel agency which is or was doing business with ITASN..

11. After hearing a preliminary injunction enter in accordance with prayers 1-10 above.

12. This Court enter Judgment against the Defendants John Dalton, Julie Harris, doing business as Hello World Travel, Inc. and Warren Travel Group, Inc. in the amount of all damages sustained by Plaintiff, plus treble damages and attorneys' fees under Gen. Laws c. 93A.

13 The Court enter such further relief as it deems just.

Signed this 26 day of JAN, 2004 under the pains and penalties of perjury.

Alan Kawadler, Vice President

Attorneys for ITASN Inc.

Richard E. Gentilli
BBO No. 189080
Thomas M. Looney
BBO No. 555040
Bartlett Hackett Feinberg PC.
10 High Street, Suite 920
Boston, MA 02110
617/422-0200

DATED:   January 28, 2004

12

A true copy by photostatic process
Attest: _____
Asst. Clerk

AGREEMENT FOR CONSULTING SERVICES

This Agreement ("Agreement") is made on December 10, 2002 by and between ITASN, Inc, (ITASN) a Massachusetts Corporation and John Dalton (DALTON).

A. ITASN is engaged in the business of providing support services to travel agencies. .
B. ITASN desires to enter into a consulting agreement with DALTON to provide consulting services.
C. DALTON is willing to enter into a Consulting agreement to provide consulting services.

Therefore, the parties agree to the following confidentiality and non disclosure conditions:

1. **Compensation.**

   a. CONSULTING -ITASN will pay DALTON will be paid $2,500 per month to provide consulting services. ITASN will specify the nature of said consulting services.

   b. During the first year that an account (agency) that signs with The Company, the DALTON will be paid a cash bonus of twenty-five cents (.25) for every GDS segment that is generated by the account. DALTON will be paid fifteen cents (.15) for every GDS segment that is generated the second year that account is with the company and ten cents (.10) for every GDS segment that is generated the third year the account is with ITASN.   The only exception is when there are any pre-agreed commission splits with other employees, contractors or any other entity.

   c. Commission payments begin the month following payment by the GDS provider, which is paid quarterly.

   d. Conversion payments. Sabre pays the ITASN $1.00 for every Agency that switches to it's GDS. The payment is based on the agencies segment productivity for the prior 12 months. ITASN will pay DALTON 10% of the conversion fee. Payment will be made in 12 equal consecutive installments beginning the month following the payment by the GDS. If the agency fails to utilize the services of ITASN, DALTON will be responsible for repaying any commissions it has received.

   e. Expenses. DALTON will be paid for all authorized expenses. ITASN at its sole option will authorize expenses.

2. **Consulting Responsibilities.** The nature, format and reporting of consulting services Will be determined by ITASN.